## Commonwealth *v.* Dorman, Appellant.

*Criminal law—Burglary—Evidence—Sufficiency.*

In an indictment charging an attempt to commit burglary, a verdict of guilty will be sustained, where the evidence on the part of the Commonwealth shows that the defendant was seen entering a narrow passage-way between two buildings, was followed by two policemen, who first saw him on a rear second story porch and afterwards captured him in a back yard, and instruments were found on his person which were devices to turn keys in locks from the outside.

Argued April 17, 1925. Appeal No. 314, October T., 1924, by defendant from sentence of O. and T. Northumberland County, February T., 1924, No. 12, in the Case of Commonwealth v. Arthur C. Dorman. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Indictment for attempt to commit burglary. Before LLOYD, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence, the charge of the court and refusal of defendant's motion to quash the indictment.

*J. A. Welsh,* and with him *J. P. Carpenter* and *T. J. Purdy,* for appellant.

*Edward Raker,* District Attorney, for appellee.

OPINION BY HENDERSON, J., July 9, 1925:

The defendant was convicted on an indictment charging him with an attempt to commit a burglary. The 1st, 7th, 8th and 11th assignments are based on the contention that there was no evidence to sustain the conviction and that the jury should have been so instructed. The argument fails to adequately value the testimony offered by the Commonwealth. The defendant was arrested at the rear of a building in the Borough of Northumberland at about midnight. He was not a resident of that town. The dwelling with respect to which he is alleged to have committed the offense was an apartment on the second floor of a business block. Along the rear end of the building, and for the convenience of tenants on the second floor, a porch was constructed to which there was access by steps; the porch extending nearly across the end of the building. The second floor included not only the apartment of Mr. Lloyd, where the attempt is said to have been made, but an adjoining apartment occupied by another tenant. The evidence shows that the defendant was seen entering a narrow passageway between the Lloyd building and a building south of it; whereupon the police authorities of the borough were notified of this fact. Two officers came to the premises—

one going to the rear of the building along the way taken by the defendant and the other passing through a narrow way on the north side of the building. One of these officers heard a noise on the porch which sounded to him as an effort to open a door leading into the Lloyd apartment. He lighted a match and about that time the defendant jumped or slid down from the porch onto some boards lying on the ground. He was immediately arrested and when interrogated gave a fictitious name. When examined shortly afterward two instruments were found in his vest pocket which were described as devices to turn keys in locks from the outside of the door. Mrs. Lloyd who lived in the apartment heard footsteps on the porch immediately outside of her bathroom and heard a crash down on the ground, and one of the officers heard a man walking on the porch and immediately thereafter saw the defendant come down "as if he came down the spouting." This evidence was sufficient to warrant the jury in concluding the defendant was on the porch at the Lloyd apartment. The sound referred to by the officer and the possession by the defendant of the false keys taken in connection with the hour of the night and the locality in which the defendant was found, furnish sufficient support for the verdict. The defendant, it is true, denied that he was on the porch or that he was on the premises for an improper purpose, but his credibility was necessarily a subject for the consideration of the jury. His explanation of his presence at the place and his reason for being there was evidently not satisfactory to the jury as the verdict disclosed. The court could not have given acquitting instruction to the jury without disregarding important facts from which incriminating inferences might be drawn.

The other assignments relate to the admission in evidence of some articles found in the defendant's room in Sunbury when it was examined on a search

warrant obtained soon after the arrest. None of these implements were incriminating and the inspection of them by the jury did the defendant no harm. The Commonwealth gained nothing by the introduction of the evidence and the offer might properly have been excluded, but inasmuch as the possession of the articles had no relation to, and were not of significance prejudicially affecting, the defense, the court should not be convicted of error in admitting the evidence as to the circumstances under which they were obtained. The conviction did not result from this evidence, but from the testimony of the Commonwealth which placed the defendant in a position from which no other than a criminal intent could reasonably be drawn. The defendant failed to sweep this aside or to excite in the minds of the jury a reasonable doubt on the subject of his guilt. We are not warranted therefore in sustaining the assignments. They are overruled and the judgment affirmed and the record remitted to the court below and it is ordered that the defendant appear in that court at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.